**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                   No. CR 15-0533 JB

MARCOS A. MARTINEZ,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed November 12, 2015 (Doc. 85)("Objections"). The Court held sentencing hearings on December 17, 2015, and on February 14, 2017. The primary issues are: (i) whether, under § 2D1.1(b)(12) of the United States Sentencing Guidelines ("U.S.S.G."), the Court should apply a 2-level enhancement to Defendant Marcos A. Martinez' offense level, because he maintained an automotive body shop for the purpose of distributing controlled substances; and (ii) whether, under U.S.S.G. § 3B1.1(c), the Court should apply a 2-level enhancement to Martinez' offense level, because he was an organizer, leader, manager, or supervisor in any criminal activity. The Court concludes, first, that Martinez operated his body shop for the purpose of distributing heroin, cocaine, and cocaine base, i.e., crack. Second, the Court concludes that Martinez supervised his sister's and his cousin's distribution of controlled substances, and that he managed his sister's handling of cash. Accordingly, the Court will overrule Martinez' Objections and will apply both sentencing enhancements.

## FACTUAL BACKGROUND

In a plea agreement, filed February 25, 2016 (Doc. 106)("Information Plea Agreement"), Martinez admitted the following facts:

> Beginning not later than December 2014, I, MARCOS MARTINEZ, combined and conspired with others to distribute heroin, cocaine and cocaine base (or "crack") in and around Santa Fe, New Mexico. My participation in that conspiracy ended upon my arrest on January 23, 2015.
>
> As part of the conspiracy, I, MARCOS MARTINEZ, obtained heroin, cocaine and cocaine based from suppliers in New Mexico. I distributed a portion of those drugs through an automobile repair business in Santa Fe known as "One Time Paint and Body." I would deliver heroin, cocaine and cocaine base to co-conspirators at that location on a daily basis. As part of the conspiracy, co-conspirators [] would distribute and sell those drugs to other persons.
>
> On January 23, 2015, law enforcement agents searched One Time Paint and Body and seized packages of heroin and cocaine base that I, MARCOS MARTINEZ, had previously delivered to a co-conspirator at that location to be sold to others.
>
> I, MARCOS MARTINEZ, kept most of the illegal drugs in my possession at locations other than One Time Paint and Body, and would bring drugs to that business as needed for re-sale to others. On the morning of January 23, 2015, I transported a small bag containing cocaine base from a shed at a residential property in Santa Fe, New Mexico, to One Time Paint and Body intending to deliver it to a co-conspirator for further distribution. Law enforcement agents found and seized that bag of cocaine base from my truck after I arrived at One Time Paint and Body. Subsequent laboratory analyses established that the bag contained approximately 13 grams of cocaine base. Law enforcement officers also seized plastic bags containing cocaine and cocaine base which I had placed in that shed. Subsequent laboratory analysis established that those bags contained 453 grams of cocaine hydrochloride and 435 grams of cocaine base.
>
> I, MARCOS MARTINEZ, also kept two firearms at my residence in Santa Fe, New Mexico. More specifically, on January 23, 2015, I possessed: a Ruger, model LC9, 9mm semi-automatic pistol, serial number 320-632-15; and a Berretta, model Tomcat, .32 caliber semi-automatic pistol, serial number DAA185865. At that time, I was prohibited from possessing firearms because I had previously been convicted of felony offenses. Law enforcement agents found and seized both of those firearms on January 23, 2015. I have been informed and admit that each of those firearms was manufactured outside of New Mexico, and each firearm traveled in interstate commerce before it came into my possession.

Information Plea Agreement ¶ 7, at 5-6 (paragraph lettering omitted).

## **PROCEDURAL BACKGROUND**

On February 18, 2015, a grand jury returned a seven-count indictment against Martinez and two co-Defendants -- Marcos Tapia and Nancy Tapia. See Indictment at 1, filed February 18, 2015

(Doc. 15)("Indictment"). The Indictment names Martinez in five counts: (i) conspiracy to possess with intent to distribute, and to distribute, cocaine, cocaine base, and heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count I); (ii) possession with intent to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2 (Count II); (iii) possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2 (Count III); (iv) possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2 (Count IV); and (v) being a felon in possession of two firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count VII). See Indictment at 1-4. The Indictment also includes a forfeiture allegation that, under 18 U.S.C. §§ 922(g), 924(d), and 28 U.S.C. § 2461(c), Martinez shall forfeit the firearms involved in the felon-in-possession offense in Count VII. See Indictment at 4. On July 6, 2015, pursuant to a plea agreement, Martinez entered guilty pleas as to Counts I, II, III, and VII. See Plea Agreement ¶ 3, at 2, filed July 6, 2015 (Doc. 60)("Indictment Plea Agreement"). As part of the Indictment Plea Agreement, the United States agreed to dismiss Count IV. See Indictment Plea Agreement ¶ 20, at 11.

On December 16, 2015, the United States Probation Office ("USPO") filed a Presentence Investigation Report. See Presentence Investigation Report, filed December 16, 2015 (not filed on CM/ECF)("PSR"). The PSR groups Counts I, II, and III for guideline calculation purposes pursuant to U.S.S.G. § 3D1.2(d). See PSR ¶ 36, at 10. For these three counts, the PSR calculates an adjusted offense level of 36, including a base offense level of 30, a 2-level enhancement under § 2D1.1(b)(12) for using the automotive body shop to distribute controlled substances, a 2-level enhancement under § 3B1.1(c) for an aggravating role in this activity as an organizer, leader, manager, or supervisor, and a 2-level enhancement under § 2D1.1(b)(15)(E) for committing the offense to earn a livelihood. See

PSR ¶¶ 37-43, at 10. With respect to Count VII, the PSR calculates a base offense level of 24 and no adjustments. See PSR ¶¶ 44-49, at 10-11. Given the multiple counts of conviction, the PSR then calculates a combined adjusted offense level of 36, plus a 1-level enhancement for Martinez being a career offender under § 4B1.1, and a 3-level reduction for acceptance of responsibility under §§ 3E1.1(a) and 3E1.1(b), for a total offense level of 34. See PSR ¶¶ 50-57, at 11. Based on Martinez' status as a career offender, the PSR calculates a criminal history category of VI, see PSR ¶ 67, at 15, and a guideline imprisonment range of 262 to 327 months, see PSR ¶ 98, at 22.

Martinez advances several objections to the PSR. See Objections at 1-13. As relevant here, Martinez objects to the PSR's enhancements under § 2D1.1(b)(12) and § 3B1.1(c). See Objections at 3-5. First, Martinez argues that he did not maintain the body shop for the purpose of distributing controlled substances. See Objections at 3. Martinez notes that he "had ongoing contracts to repair vehicles from the BMW and Mercedes dealerships and was actively negotiating for similar contracts from other dealerships and used car lots." Objections at 3. Martinez notes, moreover, that the body shop "had been an active business for decades" before he purchased it and that it "carried on for some period even after his arrest . . . ." Objections at 3. Martinez concedes that M. Tapia and he "are guilty of selling drugs," but contends that "that is a far cry from the notion that the business was being operated to sell drugs." Objections at 3. Indeed, Martinez avers, he "discouraged sales on the premises because other employees, customers and third persons might become aware and because that could harm future business." Objections at 3. Martinez adds that "[n]o drugs were stored at the business and none were found during a seizure; all of the drugs seized were found in Mr. Martinez's vehicle and a storage shed at a residence." Objections at 4. Martinez argues, further, that persons to whom he sold drugs "did not bring vehicles to the shop for repair or otherwise use the services of the business." Objections at 4. Finally, Martinez argues that, because his body shop incurred debts as

he "attempted to succeed in a competitive market," he felt "pressured . . . to stay involved in drugs to keep the door open . . . ." Objections at 4. Martinez accordingly argues that the § 2D1.1(b)(12) enhancement does not apply. See Objections at 4.

Next, Martinez disputes that he played an aggravating role as an organizer, leader, manager, or supervisor in selling controlled substances. See Objections at 4-5. Martinez contends, rather, that he was a "middle man" whose role "did not involve managing others." Objections at 4. Martinez explains that he sold controlled substances to M. Tapia, who "in turn sold on the street to people he knew." Objections at 5. Martinez asserts that, in evaluating the aggravating-role enhancement, the Court should consider the following factors:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

Objections at 5 (quoting U.S.S.G. § 3B1.1, cmt. n.4). In Martinez' view, there is no evidence that he "exercised any decision making" authority, that he "recruit[ed] an accomplice who may [have] been selling before [he] purchased the business," that he had "any share in the fruits of resale," or that he "exercised [] control or authority over others." Objections at 5. Consequently, Martinez argues, the § 3B1.1(c) does not apply. See Objections at 5.

The USPO responded to Martinez' Objections via an Addendum to the Presentence Report, filed December 16, 2015 (not filed on CM/ECF)("Addendum"). As for Martinez' objection to the § 2D1.1(b)(12) enhancement, the USPO "maintains . . . that the defendant utilized his business . . . as a premises for the purpose of distributing controlled substances." Addendum at 2. The USPO notes that, in the Indictment Plea Agreement's admission-of-facts section, Martinez "admits to distributing heroin, cocaine and cocaine base at [One Time Paint and Body] on a daily basis." Addendum at 2.

Finally, the USPO notes that law enforcement agents discovered 23.9 grams of heroin and 6.5 grams of cocaine base when they searched the shop's premises on January 23, 2015. See Addendum at 2. Regarding Martinez' objection to the § 3B1.1(c) enhancement, the USPO maintains that Martinez "supervised the distribution of controlled substance[s] conducted by his sister and cousin, who are the co-defendants in this case and managed the amount of money his sister could be in possession of." Addendum at 2.

The Court held a sentencing hearing on December 17, 2015. See Sealed Sentencing Minute Sheet at 1, filed December 17, 2015 (Doc. 91)("2015 Sentencing"). The Court opened the hearing by informing the parties that new charging documents, as well as an updated PSR, need to be filed, because, while the Indictment's Count III charges a violation of 21 U.S.C. § 841(b)(1)(B), Martinez pled guilty to a violation of § 841(b)(1)(C), based on subsequent laboratory reports which revealed that Martinez possessed less than 500 grams of cocaine when law enforcement searched his shop on January 23, 2015. See 2015 Sentencing at 2. The Court then queried whether the parties wished to argue Martinez' Objections to the PSR. See 2015 Sentencing at 2. The parties replied that, rather than argue the Objections at the present hearing, they would attempt to work through them before the next hearing. See 2015 Sentencing at 2.

The United States subsequently filed an Information re-charging the offenses alleged in the Indictment's Counts I, II, and VII, and also charging that Martinez possessed with intent to distribute a detectable amount of cocaine, a lesser-included-offense of the charge in the Indictment's Count III. See Information at 1-3, filed February 25, 2016 (Doc. 103)("Information"). On February 25, 2016, pursuant to a plea agreement, Martinez pled guilty to the offenses charged in the Information. See Information Plea Agreement ¶ 3, at 2. As a condition of the Information Plea Agreement, Martinez waives his rights to appeal, or to collaterally attack, his conviction or sentence, see Information Plea

Agreement ¶ 19, at 11, and the United States agrees to dismiss the Indictment, see Information Plea Agreement ¶ 20, at 11. To reflect the changes to Count III as the Information charges, the USPO then filed a Second Presentence Investigation Report, filed May 23, 2016 (Doc. 108)("Second PSR"). Relevant here, the Second PSR applies the same enhancements as the PSR and calculates a total offense level of 34. See Second PSR ¶¶ 35-55, at 10-12. Likewise, the Second PSR calculates a criminal history category of VI, see Second PSR ¶ 64, at 15, and calculates a guideline imprisonment range of 262 to 327 months, see Second PSR ¶ 97, at 23.

The Court held a second sentencing hearing on February 14, 2017. See Sealed Sentencing Minute Sheet at 1, filed February 14, 2017 (Doc. 117)("2017 Sentencing"). The parties indicated that the Second PSR resolves their disputes, save for Martinez' Objections to the enhancements under § 2D1.1(b)(12) and § 3B1.1(c). See 2017 Sentencing at 2. The parties then reiterated the arguments from their briefings regarding those enhancements, and the Court overruled Martinez' Objections. See 2017 Sentencing at 2.

## **RELEVANT LAW REGARDING THE GUIDELINES**

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges effectively advisory. In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551. To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the Tenth Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to considerable deference. See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage,

451 F.3d at 593 (internal quotation marks omitted). A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. at 261-62.

The United States Court of Appeals for the Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. 338, 349 (2007), as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008). This presumption, however, is an appellate presumption and not one that the trial court can or should apply. See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. 38, 46-47 (2007); Kimbrough v. United States, 552 U.S. 85, 90-91 (2007). Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[1] Guidelines sentence. See Rita v. United States,

---

[1] Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the Guideline ranges are advisory. Gall v. United States, 522 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory [.]"); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."). The Court must consider the Guidelines, see Gall v. United States, 522 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 522 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated, however, to apply a sentence within the calculated Guidelines range. See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . ."). Accord United States v. Chavez-Rodarte, 2010 WL 3075285, at *2-3 (D.N.M. 2010)(Browning, J.).

> The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated

551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

> While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

---

> departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).
>
> . . . .
>
> The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances." Irizarry v. United States, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, 2014 WL 3377695, at *20-21 (D.N.M. 2014)(Browning, J.)(emphasis in original).

United States v. Apodaca-Leyva, 2008 WL 2229550, at *6 (D.N.M. 2008)(Browning, J.). The Supreme Court recognized, however, that the sentencing judge is "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Kimbrough v. United States, 552 U.S. at 89. Applying § 3553(a)'s factors, the Court has concluded that the case of an illegal immigrant who re-entered the United States to provide for his two children and two siblings was not materially differentiated from other re-entry cases, and, thus, no variance from the Guidelines sentence was warranted. See United States v. Alemendares-Soto, 2010 WL 5476767, at *12 (D.N.M. 2010)(Browning, J.). On the other hand, in United States v. Jager, 2011 WL 831279 (D.N.M. 2011)(Browning, J.), although the defendant's military service was not present to an unusual degree and, thus, did not warrant a departure, the Court concluded that a variance was appropriate, because the defendant's military service was "superior and uniformly outstanding," as the defendant appeared to have been "trustworthy[] and dedicated, and he served with distinction." 2011 WL 831279, at *14.

**LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES**

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute." 530 U.S. at 481. The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion and its Sixth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. at 490. In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court

elaborated on its holding in Apprendi v. New Jersey, stating that the "statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at 303 (emphasis omitted)(citations omitted)(internal quotation marks omitted). In United States v. Booker, the Supreme Court held that, because the sentencing guidelines are no longer mandatory, "*Apprendi* does not apply to the present advisory-Guidelines regime." United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013). See United States v. Booker, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges -- the statute falls outside the scope of *Apprendi's* requirement.")(alterations and internal quotations marks omitted)). The Supreme Court has recently held that the requirements in Apprendi v. New Jersey apply to facts that increase a defendant's mandatory minimum sentence. See Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013).

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that Blakely v. Washington and United States v. Booker had not changed the district court's enhancement findings analysis. See United States v. Magallanez, 408 F.3d at 684-85. United States v. Magallanez involved plain-error review of a drug sentence in which a jury found the defendant, Magallanez, guilty of conspiracy to possess with intent to distribute and to distribute methamphetamine. See 408 F.3d at 676. As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing, however, the judge -- based on testimony of the various amounts that government witnesses indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the defendant and used that amount to increase his sentence under the Guidelines. See United States v.

Magallanez, 408 F.3d at 682. The district court's findings increased the defendant's Guidelines sentencing range from 63 to 78 months to 121 to 151 months. See United States v. Magallanez, 408 F.3d at 682-83. The Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict." United States v. Magallanez, 408 F.3d at 684. Although United States v. Booker made the Guidelines ranges "effectively advisory," the Tenth Circuit in United States v. Magallanez reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before." 408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance." United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[2] "[T]he application of an enhancement . . . does not implicate the Supreme

---

[2] Although the Tenth Circuit stated in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since classified its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105). See United States v. Olsen, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)). The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence. United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation). See United States v. Constantine, 263 F.3d 1122, 1125 n.2

Court's holding in Apprendi v. New Jersey." United States v. Reyes-Vencomo, 2012 WL 2574810, at *3 (D.N.M. 2012)(Browning, J.). The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005). Accord United States v. Ray, 704 F.3d at 1314. A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increased his sentence beyond the statutory maximum. See United States v. O'Flanagan, 339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, 2014 WL 6679446, at *6 (10th Cir. 2014)(unpublished)(holding that, after Alleyne v. United States, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence"). The Court has noted:

> The Court explained that, although the decision of the Supreme Court of the United States in Alleyne v. United States, . . . 133 S. Ct. 2151 . . . (2013), expands the rule from Apprendi v. New Jersey, 530 U.S. 466 . . . (2000)(holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence. See [United States v. Sangiovanni, No. CR 10-3239 JB,] 2014 WL 4347131, at *22-26 [(D.N.M. Aug. 29, 2014)(Browning, J.)].

---

(10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (finding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms).

United States v. Cervantes-Chavez, 2014 WL 6065657, at *14 (D.N.M. 2014)(Browning, J.).

## ANALYSIS

The Court will overrule Martinez' Objections. The Court concludes, first, that Martinez maintained his automotive body shop for the purpose of distributing controlled substances. Thus, the Court will apply a 2-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(12). Second, the Court concludes that Martinez supervised his sister's and his cousin's distribution of controlled substances, and that he managed his sister's cash intake. The Court will therefore apply a 2-level enhancement under U.S.S.G. § 3B1.1(c).

**I.    THE COURT WILL IMPOSE A 2-LEVEL ENHANCEMENT UNDER § 2D1.1(b)(12), BECAUSE MARTINEZ MAINTAINED HIS BODY SHOP FOR THE PURPOSE OF DISTRIBUTING CONTROLLED SUBSTANCES.**

Section 2D.1.1(b)(12) directs a sentencing court to increase the offense level by 2 levels "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). Application note 17 to § 2D1.1(b)(12) explains that, to satisfy the "purpose" requirement, "[m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." U.S.S.G. § 2D1.1 cmt. n.17. In evaluating this requirement, a sentencing court "should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance," as well as "how frequently the premises was used by the defendant for lawful purposes." U.S.S.G. § 2D1.1 cmt. n.17. The Court treats a Guidelines comment, such as note 17, as "'authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" United States v. Henderson, 604 F. App'x 665, 658

(10th Cir. 2015)(unpublished)(applying U.S.S.G. § 2D1.1 cmt. n.17)(quoting Stinson v. United States, 508 U.S. 36, 38 (1993)).

Martinez avers that the § 2D1.1(b)(12) enhancement should not apply, because he maintained the body shop for the purpose of repairing vehicles. See Objections at 3-4. Martinez notes that he had contracts to repair vehicles from major car dealerships, that he was negotiating similar contracts with other dealerships, and that his repair business continued after his arrest. See Objections at 3. Martinez also argues that detectives observed vehicles at the body shop "because those vehicles were being repaired." Objections at 3. That Martinez had repair contracts and actually repaired vehicles at his shop does not, however, negate the inference that one primary purpose for operating the shop was to distribute controlled substances. See U.S.S.G. § 2D1.1 cmt. n.17 ("[D]istributing a controlled substance need not be the sole purpose for which the premises was maintained."). In his Information Plea Agreement, Martinez admits that he distributed heroin, cocaine, and cocaine base through the body shop "on a daily basis," and that other "co-conspirators" then sold those drugs to buyers on the street. Information Plea Agreement ¶ 7.b, at 5. The Second PSR, moreover, indicates that law enforcement agents purchased heroin at the body shop's previous location in 2014, and that, as a result, Martinez moved the shop's location to avoid further surveillance of his distribution activities. See Second PSR ¶¶ 14-15, at 5.

Martinez counters that he discouraged actual sales of controlled substances at the body shop and that he did not store such substances on the shop's premises. See Objections at 4. Martinez need not, however, have used the premises to sell to the public or to store controlled substances for the § 2D1.1(b)(12) enhancement to apply; it is sufficient that he used the premises as a distribution point in a larger supply chain. The evidence indicates that Martinez obtained controlled substances from suppliers in New Mexico; that he ordinarily stored those substances at locations other than the

body shop; and that each day he delivered those substances to co-conspirators at the body shop, who in turn sold on the street. See Information Plea Agreement ¶ 7, at 5-6. Thus, Martinez maintained the body shop as an intermediate distribution point through which he funneled drugs to be sold to the public; it is immaterial that the ultimate sales occurred offsite, because Martinez moved the products through the body shop. Cf. United States v. Henderson, 604 F. App'x at 658 (rejecting the argument that sales must occur inside, rather than outside, a premises allegedly maintained for purposes of distributing drugs). The Court, accordingly, concludes that the § 2D1.1(b)(12) enhancement applies, because one of Martinez' primary purposes in maintaining the body shop was to distribute heroin, cocaine, and cocaine base.

II. **THE COURT WILL IMPOSE A 2-LEVEL ENHANCEMENT UNDER § 3B1.1(c), BECAUSE MARTINEZ PLAYED AN AGGRAVATING ROLE IN DISTRIBUTING <u>CONTROLLED SUBSTANCES.</u>**

Section 3B1.1 "provides a range of adjustments to increase the offense level based upon the size of a criminal organization and the degree to which the defendant was responsible for committing the offense." U.S.S.G. § 3B1.1(c) cmt. The range of adjustments is delineated as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1. Here, Martinez disputes that a 2-level aggravating-role enhancement applies under § 3B1.1(c). See Objections at 4-5.

At the outset, Martinez contends that, in evaluating the aggravating-role enhancement, the Court should consider the following factors:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

Objections at 5 (quoting U.S.S.G. § 3B1.1, cmt. n.4). These factors, however, are inapposite to a § 3B1.1(c) enhancement. Application note 4 to § 3B1.1 states that a sentencing court should evaluate these factors when determining whether a defendant played an organizational or leadership role, as § 3B1.1(a) requires, or whether the defendant had a "mere management or supervision" role. U.S.S.G. § 3B1.1, cmt. n.4 (listing these factors to "distinguish[] a leadership and organizational role from one of mere management or supervision"). Section 3B1.1(c) applies even if the defendant had a "mere management or supervision" role, and, thus, the distinction between such roles, and organizational or leadership roles, is irrelevant to an enhancement under that subsection.

Even applying the § 3B1.1(a) factors, however, Martinez qualifies for an aggravating-role enhancement. The evidence shows that Martinez' degree of participation in planning or organizing the offense was significant, as he acquired the drugs from other suppliers, stored those drugs at an offsite shed, and then moved the drugs to lower-level distributors under the cover of his apparently legitimate vehicle repair shop. See Information Plea Agreement ¶ 7, at 5-6. Martinez also managed his co-conspirators' subsequent distribution of the substances. See Information Plea Agreement ¶ 7, at 5-6. The Second PSR indicates, for example, that Martinez directed N. Tapia's sales, and that he "limited the amount of money she handled." Second PSR ¶ 24, at 7. Another co-conspirator, M. Tapia, "admitted to selling and distributing for Martinez." Second PSR ¶ 24, at 7.

Martinez responds that he was only a "middle man" whose role "did not involve managing others." Objections at 4. He stresses, in particular, that he "exercised no control or authority over others." Objections at 5. "'[N]o control is necessary,'" however, for the § 3B1.1(c) enhancement to

apply.  United States v. Marquez, 833 F.3d 1217, 1222-23 (10th Cir. 2016)(quoting United States v. Wardell, 591 F.3d 1279, 1304 (10th Cir. 2009)).  Rather, a defendant may play an aggravating role by "devising a criminal scheme, providing the wherewithal to accomplish the criminal objective, and coordinating and overseeing the implementation of the conspiracy even though the defendant may not have any hierarchical control over the other participants."  United States v. Wardell, 591 F.3d at 1304.  Here, the evidence establishes that Martinez -- at a minimum -- coordinated and oversaw the acquisition of controlled substances from other suppliers in New Mexico, as well as the subsequent distribution of those substances through lower-level sellers.  Cf. United States v. Marquez, 833 F.3d at 1223 ("The evidence . . . supports the conclusion that Marquez . . . coordinated and oversaw the meth purchase and transfer from Arizona, and therefore qualifies as an organizer under § 3B1.1.").  Martinez thus qualifies for an aggravated-role enhancement under § 3B1.1(c).

**IT IS ORDERED** that the objections in the Defendant's Sentencing Memorandum, filed November 12, 2015 (Doc. 85), are overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

James D. Tierney
  Acting United States Attorney
Timothy S. Vasquez
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Stephen D. Aarons
Aarons Law Firm, P.C.
Santa Fe, New Mexico

*Attorney for the Defendant*